**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| * | |
| FRENCHPORTE, LLC,<br>FRENCHPORTE IP, LLC      * | |
|  | |
|     Plaintiffs,      * | |
| v.      | Case No.: GJH-20-00467 |
|       * | |
| C.H.I. OVERHEAD DOORS, INC.,      | |
|       * | |
|     Defendant.      | |
|       * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

This patent infringement litigation arises from a dispute between Plaintiffs FrenchPorte,

LLC and FrenchPorte IP, LLC (collectively, "Plaintiffs" or "FrenchPorte") and Defendant C.H.I.

Overhead Doors, LLC[1] ("C.H.I.") related to the patent for an overhead garage door

manufacturing system and method. ECF No. 1. Pending before the Court is Defendant's Motion

to Dismiss for Improper Venue and Failure to State a Claim, ECF No. 9, and Plaintiffs' Motion

for Expedited Venue Discovery, ECF No. 12. No hearing is necessary. *See* Loc. R. 105.6 (D.

Md. 2018). For the following reasons, Defendant's Motion to Dismiss is granted, in part, and

denied, in part, and Plaintiff's Motion for Expedited Discovery is denied.

I.      **BACKGROUND**

    A.      **Factual Background**

The dispositive issue before the Court is whether Maryland is an improper venue for this

---

[1] FrenchPorte originally named C.H.I. Overhead Doors, Inc. as the defendant in this action, but C.H.I. is registered as a limited liability corporation and does not currently have an active registration as a corporation. ECF No. 9-1 at 6; *see also* ECF No. 10 at 4 n.1; *see* ECF No. 9 at 1.

patent infringement action and thus whether this case should be dismissed pursuant to Fed. R.

Civ. P. 12(b)(3). Under Fed. R. Civ. P. 12(b)(3), the Court is permitted to consider evidence

outside of the pleadings and it must view the facts in the light most favorable to the plaintiff.

*Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365–66 (4th Cir. 2012).  Because the facts

included in the filings related to Defendant's Motion to Dismiss are more relevant to the issue of

proper venue than those in the Complaint, the Court will primarily consider those facts. *See*

*Delta T, LLC v. Dan's Fan City, Inc.*, No. 8:18-cv-03858-PWG, 2019 WL 3220287, at *1 (D.

Md. July 17, 2019). The Court will draw all inferences in favor of FrenchPorte as the plaintiff.

*See id.*

### 1.      FrenchPorte

FrenchPorte specializes in creating innovative overhead garage doors that are more

attractive than standard metal garage doors. ECF No. 1 ¶ 7. The original FrenchPorte design was

an aluminum garage door that looks like French doors. *Id.* ¶¶ 7, 14. While FrenchPorte's original

doors did reasonably well in the marketplace, the aluminum doors were more expensive than

normal garage doors. *Id.* ¶ 14. The higher price, combined with infringement of FrenchPorte's

patents by Martin Doors and Raynor, hurt FrenchPorte's full potential. *Id.* However, in the late

2000s, Mr. Ken Maher, FrenchPorte's Chief Executive Officer ("CEO"), came up with a new

process for making attractive garage doors that was less expensive: use large format printers to

print high resolution images onto the doors so they look like French doors, or wood, or another

design a customer desires. *Id.* ¶ 15. Mr. Maher filed a patent application for this process in

September 2009. *Id.* After six years, Mr. Maher and his attorneys convinced the Patent and

Trademark Office that Mr. Maher's process for manufacturing overhead garage doors was new

and not obvious to those in the garage door manufacturing field. *Id.* ¶ 21. Consequently, Mr.

2

Maher was issued the patent at issue in this case (U.S. Patent No. 9,272,558 or "the '558 Patent")

on September 18, 2015. *Id.*

 While Mr. Maher's patent application was still pending, Mr. Maher shared his idea with

the then-CEO of C.H.I., Mr. Oberholt, who came to Maryland to see how the print door was

manufactured and took a video of how the process worked. *Id.* ¶ 16.  After this meeting, C.H.I.

and FrenchPorte engaged in licensing negotiations, but no license ever came to fruition. *Id.* ¶ 17.

Instead, when Mr. Bangert replaced Mr. Oberholt as C.H.I.'s CEO, Mr. Bangert asserted that the

printed garage door was C.H.I.'s idea. *Id.*

 After the '558 Patent was issued, Mr. Maher continued to attempt to strike a deal with

C.H.I., but to no avail. *Id.* ¶ 22. C.H.I. maintained that its manufacturing process was its own

invention. *Id.* As a result, Mr. Maher retained an expert, Mr. Christoph Hörmann, to determine

whether C.H.I. was infringing the patent at issue in this case. *Id.* ¶ 23. Mr. Hörmann opined that

C.H.I.'s manufacturing process does infringe on the '558 Patent. *Id.* ¶ 24. This conclusion

resulted in FrenchPorte filing the instant lawsuit. *Id.* ¶ 26.

  **2.**  **C.H.I.**

 C.H.I. is a manufacturer of overhead doors. ECF No. 1 ¶ 2; ECF No. 9-1 at 7.[2] C.H.I. is

incorporated, headquartered, and has its principal place of business in Arthur, Illinois. ECF No. 1

¶ 2; ECF No. 9-1 at 7; ECF No. 9-2 at 31. The overhead doors C.H.I. manufactures are sold

throughout the United States, including in Maryland. ECF No. 1 ¶ 4; ECF No. 9-1 at 7; ECF No.

9-2 at 31. However, C.H.I. itself does not take orders from, nor does it sell overhead doors

directly to, consumers. ECF No. 9-1 at 7; ECF No. 9-2 at 31. Rather, all C.H.I. overhead doors

are sold to consumers through a network of independent dealers, which are listed on C.H.I.'s

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

website. ECF No. 1 ¶ 4; ECF No. 1-3; ECF No. 9-1 at 7; ECF No. 9-2 at 31. The relationship

between C.H.I. and C.H.I.'s dealers in Maryland is the crux of this motion to dismiss.

As C.H.I.'s CEO explains in his declaration, C.H.I. does not have ownership stake in its

dealers, does not operate any of its dealers, and does not own or lease the place of any of its

Maryland dealers. ECF No. 9-1 at 32. In fact, C.H.I. does not have any agreements or contracts

with its independent dealers. *Id.* at 31. Consequently, C.H.I. does not require its dealers to

exclusively sell C.H.I. products, instead C.H.I.'s dealers can sell C.H.I. products, a competitor's

products, or both. *Id.* Additionally, C.H.I. does not impose a minimum order requirement on

dealers nor does C.H.I. require dealers to advertise that they sell C.H.I. products. *Id.* C.H.I.'s

dealers are not required to use C.H.I.'s name or logo at all. *Id.*

C.H.I. generally only manufactures a door after it receives an order from one of its

dealers and does not maintain inventory at a dealer's location. *Id.* at 32; ECF No. 10 at 14. The

typical ordering process is as follows: 1) a customer expresses an interest in purchasing an

overhead door to one of C.H.I.'s dealers; 2) the dealer works with the customer to select a door,

which may be a C.H.I. door; 3) the dealer prepares a price quote for the customer, which

includes the price of the door among other costs; and 4) if the customer has selected a C.H.I.

door, the dealer places an order with C.H.I.'s customer service department in Arthur, Illinois via

phone, email, fax, or online. ECF No. 9-2 at 32. In this ordering process, C.H.I. dealers have

access to custom technology that allows them to "seamlessly work with customers to customize

garage doors and order them from C.H.I." ECF No. 10 at 14. This technology was developed by

iTexico, at C.H.I.'s request, to allow dealers to place orders, create quotations, download

collateral material, be in constant communication, and offer all the tools dealers need, including

tips on providing a better customer experience. *Id.* at 9–10. The iTexico technology includes a

4

Door Visualizer tool that allows home owners and dealers to upload a picture of a home and see what garage doors might fit with that home. *Id.* The C.H.I. website allows consumers and dealers access to the Door Visualizer tool as well. *Id.*

Once C.H.I. receives an order from one of its dealers, it will manufacture the door in Arthur, Illinois, and then arrange for the door to be delivered to the dealer. ECF No. 9-2 at 32. The dealer pays for the door upon receipt. *Id.* C.H.I. alleges that, once the dealer takes possession of the door, C.H.I. no longer has any control over the door and any agreement between the dealer and the consumer is wholly independent of C.H.I. *Id.*

### B.      Procedural Background

FrenchPorte filed its Complaint, alleging patent infringement, on February 25, 2020. ECF No. 1. On June 9, 2020, C.H.I. filed the instant Motion to Dismiss, asking this Court to dismiss the case for improper venue and failure to state a claim or, in the alternative, to transfer the case to the United States District Court for the Central District of Illinois. ECF No. 9. FrenchPorte responded in opposition on June 23, 2020, ECF No. 10, and C.H.I. replied in support of its Motion on July 7, 2020, ECF No. 11. On July 10, 2020, in connection with this dispute, FrenchPorte filed a Motion for Discovery Relating to Venue. ECF No. 12. C.H.I. filed an Opposition on July 24, 2020, ECF No. 13, and FrenchPorte replied on August 7, 2020. ECF No. 14.

## II.      STANDARD OF REVIEW

"A defendant may challenge the sufficiency of plaintiff's choice of venue by way of a motion under Rule 12(b)(3)." *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 549 (D. Md. 2019) (citing *Bartholomew v. Va. Chiropractors Ass'n*, 612 F.2d 812, 816 (4th Cir. 1979)). When such a challenge has been made, "the Plaintiff bears the burden of establishing proper

venue." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018); *Delta T, LLC*, 2019 WL

3220287, at *2 (quoting *Plant Genetics Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 519, 526

(M.D.N.C. 1996)). "To survive a motion to dismiss for improper venue when no evidentiary

hearing is held, the plaintiff need only make a prima facie showing of venue." *Mitrano v. Hawes*,

377 F.3d 402, 405 (4th Cir. 2004) (citing *Delong Equip. Co. v. Washington Mills Abrasive Co.*,

840 F.2d 843, 845 (11th Cir. 1988)). "Unlike a Rule 12(b)(6) motion, evidence outside the

pleadings may be 'freely consider[ed]' in ruling on a Rule 12(b)(3) motion." *Am. Ins. Mktg.*

*Corp. v. 5 Star Life Ins. Co.*, 958 F. Supp. 2d 609, 612 (D. Md. 2013) (alteration in original)

(quoting *Sucampo Pharm. Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)); *see*

*also Aggarao*, 675 F.3d at 365–66. However "[a]ll reasonable inferences must still be drawn in

the light most favorable to the plaintiff." *Am. Ins. Mktg. Corp.*, 958 F. Supp. 2d at 612 (citing

*CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 672 (D. Md. 2009)).

## III.    DISCUSSION

When confronted with a motion to dismiss based on both failure to state a claim, pursuant

to Fed. R. Civ. P. 12(b)(6), and improper venue, pursuant to Fed. R. Civ. P. 12(b)(3), a court

must first resolve the venue question. *SAMi—Systematic Analysis Mgmt., Inc. v. Omnivere*

*Acquisitions, LLC*, No. RDB-19-2904, 2020 WL 1863292, at *3 (D. Md. Apr. 14, 2020) (citing

*Johnson v. Helicopter & Airplane Servs., Corp.*, 389 F. Supp. 509, 518 (D. Md. 1974)); *see also*

*Joyner v. Reno*, 466 F. Supp. 2d 31, 40 (D.D.C. 2006) (citing § 1406(a) for the proposition that

"a court has no discretion to reach the merits of a case in which venue is improper and an

objection to venue has been properly raised; the case must either be dismissed or transferred to a

proper venue."). Thus, the Court begins by analyzing whether venue is proper in the instant case.

Because the Court finds that venue is improper, the Court will transfer the case to the United

States District Court for the Central District of Illinois and does not reach the merits of C.H.I.'s

Fed. R. Civ. P. 12(b)(6) arguments. *See Seaman v. IAC/InterActiveCorp, Inc.*, No. 3:18-cv-401,

2019 WL 1474392, at *3 (E.D. Va. Apr. 3, 2019) ("because . . . the case must be transferred, it is

appropriate that this Court not consider the Defendants' request for dismissal under Fed. R. Civ.

P. 12(b)(6) for failure to state a claim"). The Court ends by analyzing the merits of Plaintiffs'

Motion for Venue Discovery and denies FrenchPorte's request for expedited discovery related to

venue.

### A.      Motion to Dismiss

Section 1400(b) of title 28 of the United States Code "constitute[s] 'the exclusive

provision controlling venue in patent infringement proceedings'[.]" *In re Cray Inc.*, 871 F.3d

1355, 1360 (Fed. Cir. 2017) (citing *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137

S.Ct. 1514, 1518 (2017)).[3] Section 1400(b) provides:

> Any civil action for patent infringement may be brought in the judicial district
> where the defendant resides, or where the defendant has committed acts of
> infringement and has a regular and established place of business.

28 U.S.C. § 1400(b). In the instant case, venue is not proper under either clause of §1400(b)

because C.H.I. neither resides in Maryland for the purposes of § 1400(b) nor has a regular and

established place of business in Maryland. The Court discusses the inapplicability of each of

§ 1400(b)'s clauses separately below.

### 1.      C.H.I. Does Not Reside in Maryland for the Purposes of § 1400(b)

In the instant case, venue is not proper under the first clause of § 1400(b) because C.H.I.

does not "reside" in Maryland. Pursuant to 28 U.S.C. § 1391(c)(2), "for all venue purposes," a

corporation "shall be deemed to reside, if a defendant, in any judicial district in which such

---

[3] Since 28 U.S.C. § 1400(b) is unique to patent law, Federal Circuit law, rather than regional circuit law, governs the Court's analysis of what § 1400(b) requires. *In re Cray Inc.*, 817 F.3d at 1360.

defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" Notwithstanding this provision, the Supreme Court held in *TC Heartland* that, for purposes of § 1400(b), "a domestic corporation 'resides' *only* in its State of incorporation." 137 S. Ct. at 1517 (emphasis added). Neither party disputes that C.H.I. was incorporated in Illinois, not Maryland. ECF No. 1 ¶ 2; ECF No. 9-1 at 7. Thus, pursuant to *TC Heartland,* C.H.I. does not reside in Maryland for purposes of venue in a patent infringement case.

Despite the holding in *TC Heartland*, FrenchPorte argues that this Court should apply the clear meaning of "reside" articulated in 28 U.S.C. § 1391 and find that, because personal jurisdiction is not challenged here, venue is proper in the District of Maryland. ECF No. 10 at 7–8. As support for this proposition, FrenchPorte points to a recent employment discrimination case in which Justice Gorsuch, writing for a majority of the Supreme Court, applied a textualist reading of the Civil Rights Act to determine the meaning of the word "sex". *Id.* (citing *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731 (2020)). According to FrenchPorte, the textualist approach taken by the Supreme Court in *Bostock* would, in this case, lead to a reversal of *TC Heartland,* which overruled prior Federal Circuit decisions, and cause the Court to find that C.H.I. resides in Maryland.

Notwithstanding FrenchPorte's attempted extrapolation, "[i]f a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [lower courts] should follow the case which directly controls, leaving [the Supreme Court] the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). Here, the Court must consider whether C.H.I. resides in Maryland for the purposes of venue in a patent infringement case; thus, *TC Heartland*'s holding that "a domestic corporation 'resides' only in its State of incorporation for the purposes of the

8

patent venue statute," 137 S. Ct. at 1517, is directly on point. Rather than predict what the

Supreme Court may do in the future, as an inferior court, this Court will simply apply the clear

holding of *TC Heartland* and find that C.H.I does not reside in this district for the purpose of

venue in this patent infringement litigation.

### 2. C.H.I. Does Not Have a Regular and Established Place of Business in Maryland

Turning to the second clause of 28 U.S.C. § 1400(b), venue is proper in a district where

the defendant (1) has committed acts of infringement *and* (2) has a regular and established place

of business. The parties make arguments regarding both prongs of this clause. The Court,

however, finds that, because C.H.I. does not have a regular and established place of business in

the District of Maryland, venue is improper and, consequently, the Court does not address

whether C.H.I. has committed acts of infringement in Maryland.

"[T]he requirement of venue is specific and unambiguous; it is not one of those vague

principles which, in the interests of some overriding policy, is to be given a liberal construction."

*In re Cray Inc.*, 871 F.3d at 1361 (quoting *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260,

262 (1961)). Thus, courts should narrowly construe the requirements of venue in patent cases,

including the requirement of a "regular and established place of business." *Valeant Pharm. N.*

*Am. LLC v. Mylan Pharm. Inc.*, 978 F.3d 1374, 1379 (Fed. Cir. 2020). A defendant has a

"regular and established place of business" in a judicial district when: (1) there is "a physical,

geographical location in the district from which the business of the defendant is carried out[;]"

(2) the defendant's place of business is regular and established; and (3) the place of business is

"a place *of the defendant*." *Valeant Pharm. N. Am. LLC*, 978 F.3d at 1379 (emphasis in original)

(citing *In re Cray Inc*, 871 F.3d at 1362–63). The parties in the instant action focus on the third

factor in their dispute regarding whether venue is proper.[4]

Here, FrenchPorte asserts that the places of business of C.H.I.'s dealers in Maryland are

the places of C.H.I. ECF No. 10 at 12–13. C.H.I. disagrees. In support of its position, C.H.I.

provides a sworn declaration by David Bangert, C.H.I.'s CEO, explaining that: (1) "C.H.I. does

not maintain any offices, warehouses, retail locations, or other facilities in Maryland[,]" ECF No.

9-2 at 31; (2) "No C.H.I. employees are based in or reside in Maryland[,] *id.*; (3) C.H.I. does not

have any contracts or agreements with its independent dealers in Maryland, *id.*; (4) "C.H.I. has

no requirement that dealers exclusively sell C.H.I. products [and d]ealers are also free to choose

whether they sell C.H.I. products, a competitor's products, or both[,]" *id.*; (5) "There is no

minimum order requirement imposed on dealers—they are free to order as little or as much

C.H.I. product as they prefer or need[,]" *id.*; (6) "C.H.I. does not require dealers to advertise that

they sell C.H.I. garage doors or use the C.H.I. name or logo[;]" *id.*; (7) C.H.I. has no ownership

stake in any dealer in Maryland, it does not operate or control any of its Maryland dealers, and it

does not own or lease the places of the Maryland dealers, *id.* at 32; and (8) "C.H.I. does not store

company inventory at a dealer's location[,] *id.* In response to Mr. Bangert's declaration,

---

[4] The parties do not appear to disagree regarding the presence of the first factor. C.H.I. garage doors are sold by authorized dealers that have "physical, geographical locations" within Maryland. *See* ECF No. 1-3. The parties also do not discuss the second factor. It is worthy of note, however, that the Federal Circuit has recently held that "'a regular and established place of business' requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business in the alleged 'place of business.'" *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020). It is undisputed that C.H.I. does not have any employees based in, or residing in, Maryland. See ECF No. 9-2 at 31. Thus, the inquiry in the instant case is whether there is an agency relationship between C.H.I. and its authorized dealers—*i.e.*, whether C.H.I. has the right to direct or control the dealers' actions, whether C.H.I. has manifested consent to the dealers for the dealers to act on C.H.I.'s behalf, and whether the dealers have consented to so act. *In re Google LLC*, 949 F.3d at 1345. C.H.I. has offered a sworn declaration by its CEO, Mr. Bangert, asserting that C.H.I. "does not control any dealer in Maryland" and describing the seller-buyer relationship between C.H.I. and its dealers. ECF No. 9-2 at 31–32. FrenchPorte has not offered evidence to the contrary and does not directly rebut any of the facts outlined in Mr. Bangert's declaration. Rather, FrenchPorte only asserts that C.H.I.'s relationship with its dealers is similar to the relationship between another garage door company, Martin Garage Doors, and its dealers. ECF No. 10 at 13. The analogous relationship was apparently one of "extremely tight control[.]" *Id.* FrenchPorte's assertion, however, is made without support or description. Thus, FrenchPorte has failed to show that CHI's place of business is both regular and established, and venue is improper on this ground as well.

FrenchPorte does not suggest that the declaration is improper, ECF No. 14 at 6, and largely

leaves the facts contained in the declaration undisputed. Instead, FrenchPorte references

*FrenchPorte IP, LLC v. Martin Door Mfg., Inc.*, No. TDC-14-0295, 2014 WL 4094265 (D. Md.

Aug. 14, 2014),[5] and argues that C.H.I. operates "very much the same way that Martin . . .

worked with dealers and other outlets in Maryland to sell doors and which was a key basis for

this Court's holding [in that case] that personal jurisdiction and venue were proper in Maryland."

ECF No. 10 at 13. FrenchPorte makes this assertion without support. *Id.* at 13–14.

　　　*FrenchPorte IP, LLC v. Martin Door Mfg.*, 2014 WL 4094265, is inapposite.

*FrenchPorte IP, LLC v. Martin Door Mfg.* was a previous patent infringement case brought by

FrenchPorte in the District of Maryland. 2014 WL 4094265. During this previous litigation, and

relevant to the instant case, one of the defendants, Martin Door, challenged personal jurisdiction

and venue through a motion to dismiss. *See id.* at \*1. This Court denied Martin Door's motion,

holding that the facts presented by FrenchPorte—(1) "Martin Door has an authorized dealer . . .

that sells Martin Door's products in Maryland"; (2) multiple retailers located in Maryland sell

Martin Door products; and (3) "at least 10–20 Martin Door garage doors have been sold in

Maryland through these distributors"—were sufficient to find that the Court had personal

jurisdiction over Martin Doors. *Id.* at \*6–\*7. This Court did not address venue under 28 U.S.C.

§ 1400(b), however, because *FrenchPorte IP, LLC v. Martin Door Mfg.* was litigated prior to *TC

Heartland*. Thus, under the law at that time, if a court had personal jurisdiction over a defendant,

then venue was also proper under 28 U.S.C. § 1400(b) and 28 U.S.C. § 1391(c). *See TC*

---

[5] FrenchPorte actually cites to *Frenchporte, LLC and Frenchporte IP, LLC v. Martin Garage Doors*, Case No. 13-cv-638 (D. Md.); however, there is not a case in the District of Maryland with that case number and name. Instead, 13-cv-638 is the case number for *FrenchPorte, LLC v. Raynor Worldwide, Inc.* that was filed in the Eastern District of Virginia. ECF No. 9-2 at 35. The Court assumes that FrenchPorte intended to reference *FrenchPorte IP, LLC v. Martin Door Mfg., Inc.*, No. TDC-14-0295, 2014 WL 4094265 (D. Md. Aug. 14, 2014).

*Heartland*, 137 S. Ct. at 1517–18 (describing the state of the law prior to the decision); *see also*

*In re TC Heartland LLC*, 821 F.3d 1338 (2016), *rev'd*, 137 S. Ct. 1514 (2017). Consequently,

FrenchPorte's comparison of C.H.I. to Martin Doors does not advance FrenchPorte's argument

that venue is proper in the instant case.[6] Therefore, this Court is left to consider whether the

largely uncontested facts offered by C.H.I. in its CEO's declaration preclude a finding that the

places of business of C.H.I.'s dealers are the places of C.H.I.—a requirement for venue to be

proper in Maryland. *See In re Cray Inc.*, 871 F.3d at 1363.

The first consideration—described by the Federal Circuit in *In re Cray Inc.*—relevant to

whether a place of business is the place of the defendant is "whether the defendant owns or

leases the place, or exercises other attributes of possession or control over the place." *Id.* Here, it

is uncontested that C.H.I. does not own or lease any places of business in Maryland. ECF No. 9-

2 at 31. FrenchPorte, nevertheless, asserts that C.H.I. maintains tight control over its dealers.

ECF No. 10 at 13. However, this conclusory assertion is lacking because FrenchPorte fails to

describe what that control entails and leaves uncontested C.H.I.'s evidence to the contrary.

Specifically, it is uncontested that C.H.I. does not have any contracts or agreements with its

authorized dealers, does not require the dealers to advertise that they sell C.H.I. products, does

not require dealers to use the C.H.I. name or logo, does not set a minimum order requirement,

and does not require that dealers exclusively sell C.H.I. products or sell C.H.I. products at all.

ECF No. 9-2 at 31–32. Thus, this *In re Cray Inc.* consideration favors C.H.I.'s argument that

venue is improper.

---

[6] Indeed, the facts FrenchPorte presented in the previous litigation regarding Martin Doors' business in Maryland would likely be insufficient to support venue under the law after *TC Heartland. See In re Cray*, 871 F.3d at 1361 ("Courts should be mindful of this history in applying the statute and be careful not to conflate showings that may be sufficient for other purposes, *e.g.*, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases."); *see also Valeant Pharm. N. Amer. LLC*, 978 F.3d at 1380 (same).

Another *In re Cray* consideration is "whether the defendant conditioned employment on

an employee's continued residence in the district or the storing of materials at a place in the

district[.]" *In re Cray Inc.*, 871 F.3d at 1363. It is undisputed that C.H.I. does not have

employees that reside in Maryland. ECF No. 9-2 at 31. Additionally, FrenchPorte fails to contest

that C.H.I. does not store inventory in Maryland. *Id.* at 32. FrenchPorte instead argues that

"inventory is very much a thing of the past" and "not a part of [C.H.I.'s] business practice" due

to the "highly customized doors selected at C.H.I. dealers[,]" ECF No. 10 at 14. This argument is

unconvincing—particularly when the evidence attached to FrenchPorte's own Complaint seems

to indicate that customized doors such as those sold by both C.H.I. and FrenchPorte can be

purchased in bulk, stored by a distributor, and then resold. ECF No. 1-14 at 3 ("FrenchPorte

entered into a distribution agreement with A-Tech . . . , [and] [f]ollowing the execution of the

agreement, A-tech issued a purchase order to FrenchPorte to buy a container of each model of

FrenchPorte garage doors. The first container [had] 128 units…"). Thus, this *In re Cray Inc.*

consideration also weighs in favor of C.H.I.'s Maryland authorized dealers not being the places

of business of C.H.I.

In re Cray Inc. further indicates that "[m]arketing or advertisements also may be relevant,

but only to the extent they indicate that the defendant itself holds out a place for its business." *In*

*re Cray Inc.*, 871 F.3d at 1363. In connection with this consideration, it is relevant that C.H.I.

lists Maryland authorized dealers on its website. ECF No. 1-3. However, "[t]he mere fact that a

defendant has advertised that it has a place of business in the district . . . is not sufficient to find

the place is *of the defendant*." *Delta T, LLC*, 2019 WL 3220287, at *3 (citing *In re Cray*, 871

F.3d at 1364). Also relevant is that C.H.I. does not require its name to be placed on signs

associated with the authorized dealers, on the buildings themselves, or even require the

authorized dealers to use C.H.I.'s name or logo at all. ECF No. 9-2 at 31. Thus, this

consideration is neutral and does not weigh in favor of either party's argument.

A final consideration outlined in *In re Cray Inc.* is the "nature and activity of the alleged

place of business of the defendant in the district *in comparison with* that of other places of

business of the defendant in other venues." *In re Cray Inc.*, 871 F.3d at 1364. This consideration

"might reveal that the alleged place of business is not really a place of business at all." *Id.*

FrenchPorte argues that this comparison "reveals that by C.H.I.'s standards, C.H.I. has no

'regular place of business' in the entire United States – not even its own headquarters qualify."

ECF No. 10 at 15. It is unclear how FrenchPorte came to this conclusion. It appears that C.H.I.'s

regular place of business would be in Illinois where it manufactures its products, has employees,

owns or leases land/buildings, and presumably stores its supplies and inventory (to the extent it

has any). ECF No. 9-2 at 31–32. The Court agrees that not having a regular place of business

anywhere "is plainly absurd[,]" but the Court does not find that to be C.H.I.'s position. *See* ECF

No. 9-1 at 7 ("[C.H.I.] is an Illinois entity and maintains a principal place of business in Arthur,

Illnois."). Thus, to the extent this consideration is relevant, it weighs in favor of the Maryland

dealers not being a place of the defendants.

Based on the above analysis, the Court concludes that the places of business of C.H.I.'s

authorized dealers in Maryland are not "the places of the defendant" and thus venue is improper

in Maryland under 28 U.S.C. § 1400(b).

### 3.     The Court Will Transfer this Action to the United States District Court for the Central District of Illinois

FrenchPorte requests that, to the extent the Court disagrees with its argument regarding

venue, the Court transfer the case to Illinois, ECF No. 10 at 15—an outcome which C.H.I. also

requests should the Court find venue is improper but does not dismiss the case, ECF No. 9-1 at

10 n.5 ("In the event that the Court finds venue is improper but does not dismiss this case under

Rule 12(b)(3), the Court should transfer the case to the Central District of Illinois."). FrenchPorte

based its request for transfer rather than dismissal on the delay that would be caused by having to

re-file in Illinois, which would be in addition to the delay already caused by Covid-19. ECF No.

10 at 15. Pursuant to 28 U.S.C. § 1406, "[t]he district court of a district in which is filed a case

laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice,

transfer such case to any district or division in which it could have been brought." "The decision

to transfer is left to the sound discretion of the trial court and should be determined on a case-by-

case basis." *Essex Ins. Co. v. MDRB Corp.*, No. DKC 2006-0326, 2006 WL 1892411, at *4 (D.

Md. June 7, 2006) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988)). However,

"[w]hen venue would be proper in another district . . . , transfer is preferred over dismissal." *Id.*

Venue is appropriate in the Central District of Illinois under 28 U.S.C. § 1400(b), as that is

where C.H.I. resides under the law as outlined in *TC Heartland*, 137 S. Ct. at 1517 ("a domestic

corporation 'resides' only in its State of incorporation"), and both parties have agreed to litigate

there, *see* ECF Np. 9-1 at 10 n.5; ECF No. 10 at 15. Consequently, while this Court finds that

venue is improper, it declines to dismiss the action and instead orders that the case shall be

transferred to the United States District Court for the Central District of Illinois pursuant to 28

U.S.C. § 1406. Having found venue improper, and in light of the transfer of the case to the

Central District of Illinois, the Court will not consider Defendant's arguments under Fed. R. Civ.

P. 12(b)(6). C.H.I.'s Motion to Dismiss is thus granted, in part, and denied, in part.

### B.      Motion for Expedited Discovery

FrenchPorte has requested expedited venue discovery if the Court is not satisfied with

FrenchPorte's opposition to C.H.I.'s Motion to Dismiss for Improper Venue, ECF No. 10. ECF

No. 12-1 at 3–4. "When the existing record is inadequate to support personal jurisdiction over a

defendant [or proper venue], the plaintiff is entitled to jurisdictional discovery if it can

demonstrate that such discovery would yield 'additional facts' that would 'assist the court in

making the jurisdictional determination.'" *FrenchPorte IP, LLC v. Martin Door Mfg., Inc.*, 2014

WL 4094265, at \*5 (quoting *Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics

Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005)). However, a court can deny jurisdictional

discovery where a plaintiff offers only speculation or conclusory assertions about a defendant's

contacts with a forum state—or, in the case of venue, whether the defendant has a regular and

established place of business. *See ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707,

716 n.3 (4th Cir. 2002) (affirming district court's denial of jurisdictional discovery where the

request rested on "conclusory assertions"); *McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir.

1983) (holding that the district court did not abuse its discretion in denying jurisdictional

discovery where defendants submitted affidavits and, in contrast, plaintiff "offered nothing

beyond his bare allegations that the defendants had had significant contacts with the state of

Maryland" (internal quotations omitted)); *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F.

Supp. 3d 916, 934 (E.D. Va. 2017) (denying plaintiff's request for venue discovery because it

"proffer[ed] few facts regarding [the defendant's] supposed place of business within the

forum").[7]

　　　Here, neither FrenchPorte's Motion for Expedited Discovery nor its Reply in support of

that Motion identifies a single additional fact that it hopes to discover to support its argument

that venue is proper in the District of Maryland. Moreover, FrenchPorte does not "identify any

---

[7] The grant or denial of discovery is not an issue unique to patent law, thus the Court applies the law of the regional circuit rather than the federal circuit. *Barnett v. Surefire Medical, Inc.*, No. JFM-17-1332, 2017 WL 4279497, at \*5 n.2 (D. Md. Sept. 25, 2017); *see Autogenomics Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021–22 (Fed. Cir. 2009).

source of information or fact that would change the Court's analysis of whether [C.H.I.] has a regular and established place of business in this District." *Symbology Innovations, LLC*, 282 F. Supp. 3d at 934. Thus, Plaintiffs have not shown that discovery under these circumstances would be anything more than a "fishing expedition," *State v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 449 (D. Md. 2019) ("where a plaintiff's claim of [venue] appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the court need not permit even limited discovery confined to issues of [venue] should it conclude that such discovery will be a fishing expedition" (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 403 (4th Cir. 2003)), and the Court therefore denies FrenchPorte's Motion for Expedited Discovery.

## IV.    CONCLUSION

For the foregoing reasons C.H.I.'s Motion to Dismiss, ECF No. 9, is granted, in part, and denied, in part, and FrenchPorte's Motion for Expedited Venue Discovery is denied. A separate Order shall issue.

Date: <u>January 25, 2021</u>              <u>    /s/                              </u>
GEORGE J. HAZEL
United States District Judge