UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **FRENCHPORTE IP LLC,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**CHI OVERHEAD DOORS INC,**<br><br>    **Defendant.** | Case No. 21-2014 |

REPORT & RECOMMENDATION

On December 7, 2023, the District Court granted Defendant CHI Overhead Doors Inc's ("Defendant") Motion to Dismiss (#110) and dismissed the case under Rule 37 due to Plaintiff FrenchPorte IP LLC's ("FrenchPorte") failure to comply with its discovery obligations. In the Order, the District Court noted that the outstanding issue of attorneys' fees and division of responsibility for those fees would be addressed in a future order. (#110 at 6). That is the issue before the Court now.

I.  Background

On December 17, 2022, the Court entered a Report and Recommendation (#70), which the District Court accepted (*see* #88), recommending that Defendant be awarded all reasonable expenses caused by FrenchPorte's failure to comply with its discovery obligations and the Court's orders. (#70 at 8). The Court directed Defendant "to submit a detailed log of expenses, including attorney fees, associated with Plaintiff's failure to comply with its discovery obligations and the prior Court orders …." *Id.* at 9. In addition, the Court noted that before it could assess fees, it needed more information to determine whether FrenchPorte or FrenchPorte's counsel ("Moarbes") should pay those fees. *Id.*

On January 9, 2023, Defendant submitted a log of expenses and attorneys' fees, seeking $98,957.50 in attorneys' fees and $21,699.21 in expenses. (*See* #74). After a long period of time due to events detailed in the District Court's Order (#110), on November

1

14, 2023, Moarbes filed an "In Camera Statement of FrenchPorte and Moarbes Relating to Responsibility for Sanctions" (#112). The same day, Moarbes also filed a "Statement by Moarbes, LLP Relating [to] Attorney's Fees" (#113). Kenneth Maher also submitted a letter to the Court on his own behalf and on behalf of FrenchPorte, IP, LLC, as its Managing Partner.[1]

## II.     Analysis

### A.     Attorneys' Fees and Expenses

"The starting point for a court's evaluation of any fee petition . . . 'is a lodestar analysis; that is, a computation of the reasonable hours expended multiplied by a reasonable hourly rate.'" *Sonrai Sys., LLC v. Romano*, 2022 WL 4551893, at *3 (N.D. Ill. Sept. 29, 2022) (quoting *Houston v. C.G. Sec. Servs., Inc.*, 820 F.3d 855, 859 (7th Cir. 2016)). The lodestar gives a presumptively reasonable fee, but after determining the lodestar, the court "may determine whether an adjustment is warranted under the case-specific circumstances." *Nichols v. Illinois Dep't of Transportation*, 4 F.4th 437, 441 (7th Cir. 2021). "District courts have wide discretion in determining the appropriate amount of attorney's fees," and the "party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999).

### 1.     Reasonable Hours Expended

"What qualifies as a 'reasonable' use of a lawyer's time 'is a highly contextual and fact specific enterprise[.]'" *Melikhov v. Drab*, 2018 WL 3190824, at *4 (N.D. Ill. May 21, 2018) (quoting *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010)). When reporting the hours expended on the motion, counsel must use billing judgment in deciding which hours are reasonable and "properly billed to one's *adversary* pursuant to statutory authority." *Spegon,* 175 F.3d at 552 (internal quotations and citation omitted) (emphasis

---

[1] While a limited liability company may not appear *pro se*, the Court will consider this letter in determining how the fee sanction should be assessed between client and counsel. Mr. Maher's letter also asks the Court to reconsider the dismissal sanction, arguing that his counsel is to blame for the failures, but it is too late for this. That is now a matter that must be addressed, if at all, through a separate civil action between FrenchPorte and its former counsel.

in original). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id.* (internal quotations and citation omitted). "Among other things, the Court must assess the attorneys' time entries and must exclude from the lodestar hours that are excessive, redundant, vague, inadequately documented or otherwise unnecessary." *Sonrai Sys., LLC*, 2022 WL 4551893, at *4.

Defendant asserts its attorneys and paralegals billed 107.75 hours on tasks related to FrenchPorte's failure to comply with its discovery obligations and prior Court orders. Specifically, Defendant seeks fees for hours spent on three groups of tasks:

- 20.50 hours for reviewing FrenchPorte's over one-million-page document production to determine its compliance with the Court's ESI Order,
- 19.75 hours for negotiating and preparing the Agreed Order (#49), and
- 67.50 hours for preparing its second Motion to Compel and for Sanctions (#60).

(#74 at 2; Exs. 1-4).

In support, Defendant produced a summary of hours and fees incurred from each attorney and paralegal that worked on the three tasks. (#74, Exs. 1-4). Defendant states these summaries contain redacted and excerpted versions of defense counsel's invoices to Defendant, which Defendant paid. Further, defense counsel asserts that to the extent any entry contained unrelated work, it redacted that unrelated work and reduced the billed hours and fees accordingly.

FrenchPorte does not contest any specific fee or hourly rate. Rather, FrenchPorte argues the issues here were simple and did not require more than 20 hours of time.

The entries identified encompass work that was incurred in connection with FrenchPorte's failure to comply with its discovery obligations and the Court's orders. The District Court ordered FrenchPorte to compensate Defendant "for all reasonable expenses, including attorneys' fees, caused by Plaintiff's failure to comply with its discovery obligations and court orders." (#88 at 12). The discovery obligations with which FrenchPorte failed to comply were (1) adequately supplementing its interrogatory responses, (2) applying an appropriate spam filter for its replacement production, and (3) providing a responsiveness chart for that production. *Id.* FrenchPorte failed to comply

3

with the Court's orders as far back as February 3, 2022, when the Court directed FrenchPorte to produce responsive documents and supplement its responses. The three categories of tasks, and the timeframe in which those tasks occurred, fall within the parameters for which the District Court ordered FrenchPorte to compensate Defendant.

However, as described more fully below, a reduction is warranted. The first group of tasks includes time billed for retrieving and reviewing FrenchPorte's document production, internal meetings, deficiency correspondence, and meet and confers. The second group includes time billed for meet and confers, internal meetings, drafting the Agreed Order, and correspondence. The third group includes time spent for internal communication, reviewing, drafting, and editing the Motion to Compel, and correspondence. Generally, such work is recoverable. *See, e.g.*, *Melikhov*, 2018 WL 3190824, at *5 (allowing the recovery of fees for "meeting and conferring, bringing motions, and attending hearings related to Defendants' failure to satisfy their discovery obligations").

A fee sanction should not include duplicate billing, however. Three attorneys and two paralegals worked on the first set of tasks, three attorneys and three paralegals on the second set, and three attorneys and two paralegals on the third. While "efficiency can sometimes be increased through collaboration, overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicate billing when multiple lawyers seek fees." *Schlacher v. Law Ofices of Phillip J. Rotche & Assoc., P. C.*, 574 F.3d 852, 858 (7th Cir. 2009). "When multiple attorneys are simultaneously researching, preparing, and drafting a single motion, it will inevitably lead to unnecessary duplication, which the court must take account of in determining the hours reasonably expended." *Romary Assocs., Inc. v. Kibbi LLC*, 2011 WL 4948834, at *5 (N.D. Ind. Oct. 18, 2011). Moreover, "[t]ime spent on duplicative work or work consisting solely of communications among the various attorneys acting as co-counsel … can not be allowed[.]" *Doe v. Howe Mil. Sch.*, 1996 WL 939352, at *4 (N.D. Ind. Oct. 16, 1996). Here, this apparent duplicative work on all three groups of tasks warrants some reduction.

The Motion to Compel's relative simplicity and the attorneys' experience level also warrants further reduction. "In determining whether the hours spent on preparing

motions were reasonable, district courts within the Seventh Circuit Court of Appeals consider the complexity of the factual and legal issues involved." *Romary Assocs., Inc.*, 2011 WL 4948834, at *3 (collecting cases). "If a motion to compel consists primarily of facts with minimal or no citations to case law, a reduction in the number of hours expended in preparing and researching that motion is oftentimes warranted." *Id.* at *4. "[W]hen courts have found motions to compel lacking in complexity, they have reduced the hours reasonably expended accordingly, oftentimes in half or more than half." *Id.* (collecting cases). Further, "courts should consider not only whether the motion is complex or includes more than boilerplate language, but also the experience level and skill of the attorney." *Id.* at *5.

Although lengthy, Defendant's second Motion to Compel was not complex. It was 24 pages but consisted primarily of facts with minimal citations to case law. Further, it was drafted by three separate attorneys with considerable levels of experience. Based on the Motion's lack of complexity and the attorney's experience who drafted the motion, 67.50 hours expended is unreasonable.

Accordingly, the hours expended will be reduced because of the suggestion of duplication, the simplicity of the issues involved, and the attorneys' level of experience. As noted above, "when courts have found motions to compel lacking in complexity, they have reduced the hours reasonably expended accordingly, oftentimes in half or more than half." *Id.* (collecting cases). The Court recommends reducing the hours reasonably expended on the three tasks by half to 53.9 hours.

### 2. Reasonable Hourly Rate

"A reasonable hourly rate is based on the local market rate for the attorney's services." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). An attorney's "market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Bankston v. State of Ill.*, 60 F.3d 1249, 1256 (7th Cir. 1995) (quotation omitted). "The best evidence of the market rate is the amount the attorney actually bills for similar work" *Id.*, and it "is presumptively appropriate to use as the market rate." *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d

899, 909–10 (7th Cir. 2007) (internal quotations and citation omitted). If the fee applicant establishes his or her market rate, "the burden is upon the [opposing party] to present evidence establishing a good reason why a lower rate is essential." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996) (internal quotations and citation omitted).

Defendant argues that the true billing rates of its counsel are reasonable hourly rates. Defendant does not specify each of its attorney's hourly rates, but based on the Court's review of Defendant's invoices, attorney Gianni Cutri's hourly rate is $1,495, attorney Jeremy Roux's is $1,135, and attorney Xaviere Giroud's is $900. Further, paralegal Alvaro Parrado's is $480, paralegal Daniel Shin's is $425, paralegal Maka Stefani's is $365, and paralegal Austin Keefe's is $147.50. While defense counsel has not produced an affidavit stating that Defendant agreed to pay these amounts, defense counsel states these invoices were billed to *and paid* by Defendant. In total, these invoices show defense counsel billed and *was paid* $98,957.50.

Defendant's paid invoices are sufficient to establish the actual billing rates in this case. Although these rates far exceed rates normally charged in central Illinois, "[o]nly if an attorney is unable to provide evidence of her actual billing rates should a district court look to other evidence, including 'rates similar experienced attorneys in the community charge paying clients for similar work.'" *Mathur v. Bd. of Trustees of S. Illinois Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) (quoting *Spegon*, 175 F.3d at 555). Defendant has met its burden of establishing the requested rates are appropriate for the lodestar calculation.

The burden now shifts to FrenchPorte to establish good cause for why a lower rate is essential. FrenchPorte argues that no more than $10,000 in attorney's fees should be awarded in this case, or 20 hours of attorney time at a blended rate of $500 per hour. Because FrenchPorte offers no support and cites no authority for this argument, it has failed to establish good cause for why a lower rate is appropriate. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Defendant has established the true billing rates of its counsel, and

6

FrenchPorte cannot rebut those actually paid rates. The resulting lodestar calculation is $49,478.75.

While the lodestar gives a presumptively reasonable fee, after determining the lodestar, the court "may determine whether an adjustment is warranted under the case-specific circumstances." *Nichols*, 4 F.4th at 441. When awarding fees as a sanction, Rule 37 requires the Court to consider other circumstances that would make an award of expenses unjust. Fed. R. Civ. P. 37(b)(2)(C). Here, the Court originally declined to impose the "harsh sanction" of dismissal. *Rice v. City of Chicago*, 333 F.3d 780, 786 (7th Cir. 2003). Instead, the Court directed that Defendant be awarded fees and expenses as a lesser sanction. However, before determining the reasonable amount of fees and expenses, the Court ordered dismissal as a sanction. Because Defendant obtained the ultimate sanction, further awarding Defendant $49,478.75 in fees seems excessive, especially since Defendant would have incurred those expenses defending the case to its conclusion. In an attempt to make the sanction more just and to serve its intended purpose, the Court recommends reducing the lodestar fee ($49,478.75) by 50 percent to $24,739.38.

Defendant also seeks expenses associated with hosting FrenchPorte's entire document production. Because FrenchPorte's March 2022 production excluded relevant documents and massively overproduced obviously irrelevant documents, Defendant asserts it had to host FrenchPorte's production (more than one million pages) in an electronic database. Defendant contends it would not have incurred this expense if FrenchPorte had properly reviewed and produced only responsive material in the proper format. Defendant asserts FrenchPorte's actions caused Defendant to incur $43,398.42 in data storage costs, but Defendant only seeks half of its data storage costs, totaling $21,699.21. (*See* #74, Ex. 5). Because Defendant incurred these additional expenses due to FrenchPorte's failure to comply with its discovery obligations (and Defendant reduced the amount to account for what it would have incurred anyway), Defendant may recover them.

Thus, the Court recommends that Defendant be awarded $24,739.38 in fees and $21,699.21 in other expenses for a total of $46,438.59.

B.    **Responsibility for Fees and Expenses**

The Court also must decide whether FrenchPorte, Moarbes, or both are responsible for paying the fees and expenses assessed above. "Courts seek to allocate sanctions between the attorney and the client according to their relative responsibility" for Rule 37 violations. *Borowski v. DePuy, a Div. of Boehringer Mannheim Co.*, 850 F.2d 297, 305 (7th Cir. 1988).

A review of FrenchPorte's discovery failures is necessary here. On April 9, 2021, Defendant served FrenchPorte with its first discovery requests. After FrenchPorte failed to respond to Defendant's discovery requests, Defendant filed a Motion to Compel on November 29, 2021. On February 3, 2022, the Court granted Defendant's Motion and ordered FrenchPorte to both produce "all remaining responsive documents for Defendant's Request for Production" and "to appropriately supplement its responses to interrogatory Nos. 1-7 by February 14, 2022."

Starting on February 17, 2022, three days after the deadline, FrenchPorte finally began producing documents. In addition, FrenchPorte supplemented its responses to interrogatories on February 21, 2022, one week after the Court's deadline. Defendant claimed that the February production was deficient because it included thousands of irrelevant documents and because FrenchPorte produced the documents as unsearchable single page PDFs without the required metadata fields. In addition, Defendant claimed FrenchPorte's response included improper objections and failed to fully answer the interrogatories.

The parties met and conferred on February 28, 2022, in an attempt to resolve their disputes. FrenchPorte promised to fulfill certain tasks by the end of March as presented to the Court in the proposed Agreed Order (#49). In short, FrenchPorte agreed to (1) replace its document production with a production using Bates numbering ("replacement production"), (2) produce a chart indicating the document request to which each document responds, (3) apply a spam filter for the replacement production to weed out irrelevant documents, and (4) supplement its responses to interrogatories 1-

7 to provide complete answers. The Agreed Order did not include a deadline for completion.

On May 11, 2022, Defendant filed its second Motion to Compel (#53), claiming FrenchPorte had failed to comply with the Agreed Order and seeking sanctions. In its Response (#57), FrenchPorte admitted it failed to supplement its original interrogatory responses, failed to produce the agreed upon chart, failed to provide Defendant with the terms used in the spam filter, and took the position that it was no longer willing to provide bates citations to every document. FrenchPorte promised to update the Court on these matters "so that they do not need to be an unnecessary topic in the instant briefing and any subsequent hearing."

Plaintiff failed to provide an update to the Court as promised, and the Court entered a Text Order giving FrenchPorte seven days to provide an update. In its update, FrenchPorte stated that it still needed to give Defendant the remaining documents wrongly noted as spam, but that it had supplemented its interrogatory responses.

In turn the Court entered the following Text Order:

The Court orders Plaintiff to completely and comprehensively comply with its discovery obligations within 14 days. The Court reminds Plaintiff that the correct process for anticipated delays is to ask for leave or an extension instead of retroactively providing the Court with excuses. If Plaintiff fails to completely and comprehensively comply with its discovery obligations by the new deadline, Defendant can renew its present motion. Failure to comply with discovery obligations may result in sanctions, including imposing attorney's fees and dismissing the case with prejudice.

On July 6, 2022, FrenchPorte produced what it referred to as the "balance of [its] document production . . ." It stated that "90% or so of the data turned out to be spam, but the remaining 10% was responsive . . ." It said it would complete the outstanding matters within one to two days. Nine days later, on July 15, FrenchPorte provided the spam domain list. On August 25, 2022, Defendant filed its second Motion for Sanctions (#60).

On December 19, 2022, the Court entered a Report and Recommendation (#70) finding that FrenchPorte failed to comply with its discovery obligations by failing to adequately supplement its interrogatory responses, apply an appropriate spam filter for

its replacement production, and provide a responsiveness chart for that production. The Court ordered FrenchPorte to fully and completely comply with all its discovery obligations and prior Court orders, including the parties' Agreed Order, within 21 days. The District Court adopted the Court's Report and Recommendation and ordered FrenchPorte to compensate Defendant "for all reasonable expenses, including attorneys' fees, caused by Plaintiff's failure to comply with its discovery obligations and court orders." (#88 at 12).

Within this context, the Court must determine who is responsible for FrenchPorte's discovery failures as far back as February 3, 2022, when the Court directed FrenchPorte to produce responsive documents and supplement its responses, up to December 19, 2022, when the Court entered its Report and Recommendation.

Moarbes argues FrenchPorte failed to provide the funding necessary to fulfill FrenchPorte's discovery obligations and therefore bears the responsibility for FrenchPorte's discovery failures. FrenchPorte, however, argues that it provided the necessary funding to Moarbes, that Moarbes failed to use that funding appropriately, and that Moarbes therefore bears the responsibility for FrenchPorte's discovery failures.

The terms of FrenchPorte and Moarbes' payment agreement are set forth in Moarbes' February 14, 2020 engagement letter, which states:

> This letter will memorialize our representation of you in connection with prosecuting your patent case against CHI in Maryland District Court.
>
> Mr. Geoffrey Mason will be primarily responsible for representing you in connection with this matter, along with other members of the firm as needed. Rather than bill for their work at their regular rate of $500/hour, we agree to perform the work on this case at a partial contingency rate of $250/hour, where in exchange for discounting our fees by half, we will receive 20% of all of the net proceeds payable to you from the litigation, whether through settlement or judgment on the merits.
>
> Please note that all rates are reviewed for adjustment annually. We also bill, at cost, for any incidental and third-party expenses, such as postage, government filing fees, and the like. You are responsible for all out of pocket costs in this litigation. Our partial contingency arrangement only leads to the aforementioned reduction in our hourly rate, Moarbes takes no

> responsibility for any out of pocket costs in this matter. Statements will be rendered monthly for services performed during the preceding month and are due upon receipt.
>
> To initiate this litigation, you will provide us with a $5,000 retainer payable to Moarbes LLP to initiate the representation. You have agreed to refresh this $5,000 retainer monthly. This retainer will be maintained in our client trust fund until fees relating to this matter have been earned. Any fees in excess of this retainer that remain a debt owed to our firm will be deducted from the proceeds of the litigation before those proceeds are subject to division as set forth above.
>
> If these terms and conditions are acceptable, please sign this letter in the space below and return it to me by email.

(#93, Ex. B).

This partial contingency arrangement shows that FrenchPorte agreed to pay Moarbes a $5,000 monthly retainer fee, which would be maintained in a client trust. Any fees exceeding the retainer would remain as a debt owed to Moarbes and would be deducted at the end of the litigation from any proceeds FrenchPorte received. Any third-party expenses and out of pocket costs would be FrenchPorte's responsibility, due monthly upon receipt. The initial email exchange between FrenchPorte and Moarbes further shows that FrenchPorte understood all expenses would be FrenchPorte's responsibility. (*See* #93-3).

FrenchPorte regularly made $5,000 monthly payments to Moarbes from February 2020 to February 2022 as agreed on in the engagement letter. (*See* #93-4). Moarbes asserts that after the Court directed FrenchPorte to produce certain documents and supplement certain interrogatory responses by February 14, 2022, Moarbes sought funding from FrenchPorte to cover these expenses pursuant to their engagement letter. Moarbes contends FrenchPorte refused to provide any additional money beyond the normal $5,000 payments until March 15, 2022, when it provided a $100,000 wire. (*See* #93-5 at 4).

Moarbes asserts that between February 3, 2022 and March 15, 2022, Moarbes and Chevy Chase (a law firm Moarbes retained for the expense of reviewing the documents in this case) did what they could to comply with the Court's orders. However, according

11

to Moarbes, neither Moarbes nor Chevy Chase had the internal resources to conduct the hundreds of hours of review needed in a matter of weeks and could not bring in outside contract attorneys without the means to pay them. Moarbes contends that FrenchPorte therefore put Moarbes and Chevy Chase in the position of being unable to comply with the Court's orders.

FrenchPorte, however, points to the fact that it paid Moarbes $100,000 on March 15, 2022, and $25,000 on July 2, 2022. (*See* #132, Ex. A). FrenchPorte asserts that this was the amount Moarbes asked for and believed this would be enough to fulfill its pending discovery obligations. FrenchPorte contends that instead of paying the third-party vendors with this $100,000, Moarbes paid itself. Moarbes, however, asserts that the invoices show Moarbes used this money to pay Chevy Chase.

It is unclear from the invoices whether Moarbes used the $100,000 to pay Chevy Chase or itself. (*See* #93, Exs. 4, 6, 7-8). Regardless, Moarbes acknowledges that "FrenchPorte eventually did fund an external review" but "it did so begrudgingly and after losing many critical weeks of review opportunity with a fully funded team." (#112 at 10).

On the one hand, it appears that FrenchPorte's delay in providing funding to Moarbes contributed to the inadequate February document production and interrogatory responses. On the other hand, it appears that Moarbes had the adequate funding as of March 15 and still failed to comply with FrenchPorte's discovery obligations, leading Defendant to file its renewed Motion for Sanctions in August 2022. Accordingly, both FrenchPorte and Moarbes are responsible for the failures and therefore the sanctions, with Moarbes bearing 50 percent of the responsibility and FrenchPorte bearing 50 percent of the responsibility.

Moarbes asserts that it lacks the ability to pay Defendant's reasonable attorneys' fees and expenses and that its inability to pay is a circumstance that would make an award of expenses unjust here. (#115 at 1). Moarbes contends that "[w]hen a party has no ability to pay and payment is a condition for avoiding dismissal, dismissal itself is warranted." (#115 at 1). In support, Moarbes cites *Moon v. Newsome*, 863 F.2d 835, 838

12

(11th Cir. 1989). However, *Moon* stands for the proposition that "[w]here monetary sanctions are imposed on an *IFP litigant* and the litigant comes forward showing a true inability to pay, it might be an abuse of discretion for the court then to dismiss for failure to pay." *Id.* (emphasis added). Moarbes is law firm, not a *pro se* litigant proceeding *in forma pauperis.*

Instead of pointing to Moarbes' financial status, the "*In Camera* Statement of Moarbes Relating to Inability to Pay" (#115) describes the financial status of Geoffrey Mason personally, the attorney at Moarbes representing FrenchPorte. Specifically, Mr. Mason states, "Counsel's income is generally about $110,000 a year, out of which he must make regular child support payment and otherwise support himself." (#115 at 3) (quoting #86 at 4). Further, Mr. Mason states, "As for my liabilities, I have a negative net worth overall, with debts over $100,000 and few assets." (#115 at 4).

"[A]lthough the 'rule does not use the phrase law firm,' Federal courts frequently award Rule 37 sanctions against both the attorney personally and the attorney's law firm." *Nukote Int'l, Inc. v. Off. Depot, Inc.*, 2015 WL 71566, at *9 (S.D. Fla. Jan. 6, 2015). "Moreover, awarding Rule 37 sanctions against a law firm, even where the acts were committed by one attorney, is within the Court's discretion." *Penta v. Costco Wholesale Corp.*, 2016 WL 1171612, at *5 (E.D.N.Y. Mar. 25, 2016).

The retainer agreement between Moarbes and FrenchPorte makes clear that FrenchPorte retained Moarbes the law firm to represent it. While Mr. Mason was "primarily responsible for representing" FrenchPorte in the litigation, other members of the firm were also anticipated and the ultimate responsibility for the representation falls on the firm. The Court therefore recommends that Moarbes, as the ultimate counsel for FrenchPorte, be responsible.

As a final matter, Defendant has indicated it intends to move for further attorneys' fees under 35 U.S.C. § 285, stating that such a motion will be "forthcoming" after the Court rules on the amount and allocation of liability for the present discovery sanctions. (*See* #130 at 1). The District Court did not instruct Defendant to proceed in this way, and Defendant makes little effort to explain why this case is so exceptional to warrant the

assessment of more fees. The District Court dismissed FrenchPorte's Amended Complaint (#22) with prejudice on December 7, 2023 (which as a discovery sanction is itself quite exceptional), leaving only issues relating to the instant attorneys' fees to be resolved. In the more than three months since dismissal, Defendant has not moved for an award of fees under 35 U.S.C. § 285. Accordingly, the Court recommends that this case be terminated.

Moarbes' Renewed Motion to Withdraw (#118) is DENIED as moot.

### III.    Conclusion

For the reasons discussed above, the Court recommends that the District Court award Defendant $46,438.59 in fees and expenses, that FrenchPorte be held responsible for paying 50 percent of the fees and expenses, that Moarbes be held responsible for paying 50 percent of the fees and expenses, and that this case be terminated. Moarbes' Renewed Motion to Withdraw (#118) is DENIED as moot. Defendant's Motion to Seal (#128) is GRANTED.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within fourteen (14) days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 11th day of March, 2024.

                                                     s/ERIC I. LONG
                                       UNITED STATES MAGISTRATE JUDGE